01

02

03

04

05

06

07                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
08                          AT SEATTLE

09  ROBERT S. HILLIARD,                    )    CASE NO. C12-6022-JLR-MAT
                                           )
10          Plaintiff,                     )
                                           )
11          v.                             )    REPORT AND RECOMMENDATION
                                           )    RE: SOCIAL SECURITY DISABILITY
12  CAROLYN W. COLVIN, Acting              )    APPEAL
    Commissioner of Social Security,[1]    )
13                                         )
            Defendant.                     )
14  _____       )

15          Plaintiff Robert S. Hilliard proceeds through counsel in his appeal of a final decision of

16  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

17  denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an

18  Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

19  record (AR), and all memoranda of record, the Court recommends this matter be REMANDED

20  for further administrative proceedings.

21  _____

22          1 Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as defendant in
    this suit.   Fed. R. Civ. P. 25(d)(1).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02      Plaintiff was born on XXXX, 1958.[2]  He graduated from high school and previously

03 worked as a laborer and trim stencil maker.

04      Plaintiff filed an application for DIB in April 2009, alleging disability beginning July 2,

05 2006.  (AR 123-24.)  His application was denied initially and on reconsideration, and he

06 timely requested a hearing.

07      ALJ M.J. Adams held a hearing on January 31, 2011, taking testimony from plaintiff, a

08 vocational expert, and plaintiff's sister, Suzanne Firth.  (AR 36-63.)  At hearing, plaintiff

09 amended his alleged onset date to December 31, 2007.  (AR 50.)  On February 17, 2011, the

10 ALJ rendered a decision finding plaintiff not disabled.  (AR 20-31.)

11      Plaintiff timely appealed.   The Appeals Council granted plaintiff's request for review.

12 (*See* AR 4.)  In a decision dated September 27, 2012, the Appeals Council made one new

13 finding, affirmed the ALJ's remaining findings, and concluded plaintiff was not disabled.   (AR

14 4-7.)  By granting review, the Appeals Council issued the Commissioner's final decision.   20

15 C.F.R. §§ 404.505, 404.981.   *Accord Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1162 (9th Cir.

16 2012).   Plaintiff appealed this final decision of the Commissioner to this Court.

17 **JURISDICTION**

18      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

19 **DISCUSSION**

20      The Commissioner follows a five-step sequential evaluation process for determining

21 _____

22      2 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01    whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

02    must be determined whether the claimant is gainfully employed.  The ALJ found that

03    plaintiff's work since the amended onset date, including his current part-time work, did not

04    constitute substantial gainful activity (SGA).

05        At step two, it must be determined whether a claimant suffers from a severe impairment.

06    The ALJ found plaintiff's features of pervasive developmental disorder, social anxiety

07    disorder, and features of schizoid and avoidant personality disorder severe.  Step three asks

08    whether a claimant's impairments meet or equal a listed impairment.  The ALJ found

09    plaintiff's impairments did not meet or equal the criteria of a listed impairment.

10        If a claimant's impairments do not meet or equal a listing, the Commissioner must

11    assess residual functional capacity (RFC) and determine at step four whether the claimant has

12    demonstrated an inability to perform past relevant work.  The ALJ found plaintiff had the RFC

13    to perform a full range of work at all exertional levels and the mental capability to adequately

14    perform the mental activities generally required by competitive, remunerative work as follows:

15    plaintiff can understand, remember, and carry out simple, one-to-two step and detailed and

16    complex instructions required of jobs classified at a specific vocational preparation ("SVP")

17    level of one or two or unskilled work, and also some jobs at the SVP 3 and 4 and semi-skilled

18    level of work; plaintiff has the average ability to perform sustained work activities (i.e., can

19    maintain attention and concentration, persistence, and pace) in an ordinary work setting on a

20    regular and continuing basis (i.e., eight hours a day for five days a week or an equivalent work

21    schedule) within customary tolerances of employers' rules regarding sick leave and absence;

22    plaintiff can make judgments on simple and detailed or complex work-related decisions

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01 required of jobs up to the semi-skilled level and can respond appropriately to a familiar

02 supervisor, but should not be required to interact with co-workers to accomplish the work;

03 plaintiff can deal with changes all within a stable work environment not dealing with the

04 general public, as in a sales position or where the general public is frequently encountered as an

05 essential element of the work process; and incidental contact with the general public is not

06 precluded.   With that RFC, the ALJ found plaintiff able to perform his past relevant work as a

07 laborer as actually and generally performed.

08      If a claimant demonstrates an inability to perform past relevant work or has no past

09 relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

10 claimant retains the capacity to make an adjustment to work that exists in significant levels in

11 the national economy.   Finding plaintiff not disabled at step four, the ALJ did not proceed to

12 step five.   The ALJ concluded plaintiff was not under a disability from December 31, 2007

13 through the date of the decision.

14      The Appeals Council also rendered a decision finding plaintiff not disabled.   The

15 Appeals Council affirmed the ALJ's findings at steps one through three.   The Appeals Council

16 disagreed with the ALJ's step four finding, concluding plaintiff's past work as a laborer did not

17 rise to the level of SGA.   However, the Appeals Council concluded plaintiff's earnings as a

18 trim stencil maker were sufficient to meet the SGA threshold, and that plaintiff had the RFC to

19 perform that job as actually performed.

20      This Court's review of the final decision is limited to whether the decision is in

21 accordance with the law and the findings supported by substantial evidence in the record as a

22 whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

01  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

02  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

03  F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

04  supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

05  F.3d 947, 954 (9th Cir. 2002).

06       Plaintiff argues the ALJ failed to properly evaluate the medical evidence, his testimony,

07  and the lay evidence, erred at step three and in determining his RFC, and that the Appeals

08  Council erred by determining his work as a trim stencil maker qualified as past relevant work.

09  He requests remand for an award of benefits or, in the alternative, for further administrative

10  proceedings.   The Commissioner argues that the decisions of the ALJ and Appeals Council are

11  supported by substantial evidence and should be affirmed.

12                    Medical Opinion Evidence

13       Plaintiff argues the ALJ failed to properly evaluate the opinions of examining

14  physicians Drs. J. Keith Peterson and Howard Lloyd.   As the record contained contradictory

15  opinion evidence from reviewing physicians/state agency consultants (AR 223-36, 239), the

16  ALJ was required to provide "'specific and legitimate reasons' supported by substantial

17  evidence in the record" for rejecting the opinions of Drs. Peterson and Lloyd.  *Lester v. Chater*,

18  81 F.3d 821, 830-31 (9th Cir. 1996) (quoted source omitted).   It should be noted that the

19  medical record in this case is extremely limited, consisting almost entirely of the opinions of the

20  physicians named above and a record from Dr. Nancy Grubb containing a referral to Dr. Lloyd.

21  A.   Dr. Peterson

22       Dr. Peterson conducted an examination of plaintiff in July 2009.  (AR 211-16.)   The

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  ALJ assessed Dr. Peterson's opinions as follows:

> Consultative examiner Dr. Peterson opined that from a cognitive standpoint, the claimant was "able to work."  He noted that the claimant's pragmatic language was impaired, the cause of which could be a combination of social anxiety and cognitive rigidity.  He stated that the claimant had no trouble with basic instructions, his stamina seemed good, and he was an excellent problem solver: therefore, he should be able to learn simple and quite complex nonverbal material.  Dr. Peterson stated that the prognosis for the claimant's ability to handle a job was good in a sheltered situation and fair in the open market.  Dr. Peterson's opinion is given weight to the extent that it was based on the mental status examination findings and results of cognitive testing, which were consistent with mild limitations.  Again, however, I note that Dr. Peterson did not have accurate information regarding the extent of the claimant's work activity, therefore, his opinion is not entirely persuasive.

09  (AR 29, internal citation to record omitted.)   The ALJ had previously described the

10  observations, testing results, and findings of Dr. Peterson in detail.  (AR 26.)   The ALJ also

11  earlier found that plaintiff's "ongoing and consistent" work activity "seriously undermined" his

12  allegations of disability:

> Although the claimant has not engaged in disqualifying [SGA], he has performed work activity on a consistent basis for the same employer for 15 years.  The claimant's work fluctuates because of the nature of the aviation industry, but he works when he is given the opportunity to do so, sometimes on a full-time basis.

16  (AR 27.)   The ALJ found significant the absence of any evidence the employment involved

17  special accommodations, that it was sheltered in any way, or that plaintiff's performance was

18  not acceptable (*id.*), a finding challenged by plaintiff and discussed in detail in relation to step

19  four.

20      Plaintiff argues the absence of accurate information regarding the extent of his work

21  activity is not a "legitimate reason to reject Dr. Peterson's opinion about [his] limitations."

22  (Dkt. 15 at 9.)   He does not provide any explanation for this assertion.   Plaintiff also, in reply

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  to an argument made by the Commissioner, denies the ALJ accounted for all of the limitations

02  described by Dr. Peterson.   He notes the assessed Global Assessment of Functioning (GAF)

03  score of 47, *see* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)

04  (DSM-IV-TR) (describing "serious symptoms" or "any serious impairment in social,

05  occupational, or school functioning."), testing results reflecting "very poor" short-term and

06  working memory and "poor" "[r]apid graphomotor responding or perceptual scanning[,]" and

07  the opinion that plaintiff's "pragmatic language was impaired[,]" possibly due to "a

08  combination of social anxiety and cognitive rigidity manifested in interactions with people[,]"

09  and that although "[h]is language skills improved rather dramatically during our time together,

10  . . . the latency to respond issue did not disappear."   (AR 216.)

11      Dr. Peterson noted the report that plaintiff "has never been fully employed" and "does

12  very part-time work for two employers who are both members of the claimant's church[,]"

13  consisting of "unskilled 'pick-up' tasks", and that he occasionally mows lawns in his

14  neighborhood.   (AR 211-12.)   He clearly considered this report in the summary and

15  prognosis:  "He has almost no work history, and has lived an extremely sheltered life."   (AR

16  216.)   As discussed below, the final decision in this matter does not adequately address the

17  issue of the accommodations provided to plaintiff in his past work, and the step four decision

18  lacks the support of substantial evidence.   However, even considering those accommodations,

19  the information provided to Dr. Peterson did not allow for a full or clear picture of plaintiff's

20  work history, which, as the ALJ noted, included full-time work, at various times, for a

21  long-term employer.   Given Dr. Peterson's reliance on the information provided at

22  examination, it was entirely appropriate for the ALJ to consider that that information was not

01 accurate.

02     Nor does plaintiff otherwise support error in the ALJ's assessment.   Dr. Peterson found

03 plaintiff able to work "[f]rom a cognitive standpoint[,]" acknowledged language-related

04 impairment without assigning any specific limitation, and stated plaintiff "had no trouble with

05 basic instructions," had good stamina, "is an excellent problem solver, and should be able to

06 learn simple and quite complex nonverbal material."  (AR 216.)  He ultimately opined he

07 would like to see plaintiff "in a vocational training program tailored to his strengths[,]" and that

08 the prognosis for handling a job in a sheltered situation was "good" and in the open market was

09 "fair."  (*Id.*)   As the Commissioner argues, the ALJ did, in large part, account for the

10 limitations identified by Dr. Peterson.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

11 1223 (9th Cir 2010) (ALJ need not provide reason for rejecting physician's opinions where ALJ

12 incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations

13 "entirely consistent" with limitations assessed by physician).

14     Further, to the extent he rejected any aspect of the findings or opinions of this physician,

15 the ALJ provided a specific and legitimate reason for doing so, as discussed above.   The ALJ

16 also relied on the opinions of the Stage agency physicians.   (AR 28.)   For this reason, and for

17 the reasons stated above, plaintiff fails to demonstrate error in relation to Dr. Peterson.

18 B.    Dr. Lloyd

19     Dr. Lloyd examined plaintiff in June 2010 (AR 245-49), following a referral from Dr.

20 Grubb.   As the ALJ observed, Dr. Grubb "noted that 'one of the main reasons' the claimant

21 presented to the clinic was to establish care 'so he can move forward with an application for

22 Social Security disability.'"   (AR 26-27.)   Dr. Grubb also "noted that the claimant spoke in a

01  slow, deliberate manner; however, there was no evidence of anxiety, depression, or agitation."

02  (AR 27 (citing AR 258-59).)

03          The ALJ described and analyzed the evidence from Dr. Lloyd first within the context of

04  plaintiff's credibility:

05          Dr. Lloyd[] . . . noted the claimant's "history of an unspecified developmental
            delay." The claimant described a very limited social network that was
06          comprised mostly of family members and acquaintances from church. The
            claimant denied any problems with concentration and attention, and stated that
07          he was generally able to complete household chores. However, he reported that
            he sometimes had difficulty finding words in conversations and as a result,
08          people misunderstood him. On mental status examination, the claimant
            presented as rather disheveled. He was quiet and reserved and did not maintain
09          consistent eye contact or initiate conversation. However, Dr. Lloyd stated that
            the claimant's comprehension of questions seemed adequate, and although he
10          did not have overt word finding difficulties, he needed extra time to formulate
            his thoughts into words. Dr. Lloyd stated that the claimant's recent and remote
11          memory seemed fair and his thought processes were linear and coherent. The
            claimant understood and followed direction adequately. Dr. Lloyd
12          administered several cognitive testing measures, the results of which indicated
            that the claimant's overall intellectual functioning was in the average to high
13          average range. The claimant's attention and concentration skills were
            consistently in the average range. Dr. Lloyd stated that the results of the
14          evaluation were notable for several areas of cognitive strength including average
            to above average intellectual functioning and reasonably strong visuospatial
15          abilities. The claimant's attention and language skills were consistently in the
            average range, and his memory functioning was average for visual information
16          but there was evidence of impairment particularly for single-trial learning.

17  (*Id.*, internal citations to record omitted.) Considering that evidence, and the evidence from

18  Dr. Peterson, the ALJ concluded:

19          The objective findings of record are therefore consistent with some mild
            cognitive limitations, but do not support allegations of significant or debilitating
20          functional limitations. The claimant's intellectual functioning is average to
            above average as evidenced by objective testing, and his concentration and
21          attention are intact. While the findings may be consistent with some memory
            impairment, it is not so significant as to cause severe limitations. The records
22          are consistent with some limitations in social functioning, which are addressed

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01      in the [RFC].  In sum, the psychological evaluations and cognitive testing
        measures are not consistent with limitations so severe that they would preclude
02      employment.

03   (*Id.*)  The ALJ thereafter assessed the opinions of Dr. Lloyd:

04      Examining source Dr. Lloyd opined that the claimant's social anxiety combined
        with the neurocognitive difficulties would result in "some fairly substantial
05      functional limitations," particularly in social settings.  He stated that while the
        claimant had the basic intellectual capability to perform adequately in a work
06      setting, he lacked "the necessary social skills and executive functioning capacity
        to function in a competitive work environment."  Dr. Lloyd stated that the
07      "limited" work experience the claimant had involved fairly repetitive tasks that
        he performed essentially in isolation.  He opined that interacting with
08      coworkers or the public would be "extraordinarily difficult" for the claimant,
        and also opined that the claimant's performance speed would render him unable
09      to maintain the pace needed to perform at acceptable levels.  Dr. Lloyd's
        opinion is not persuasive or given significant weight for several reasons.  First,
10      it is significant that testing contained in Dr. Lloyd's report showed overall
        normal functioning, including a full scale IQ score of 103, which does not
11      support the cognitive limitations assessed.  Second, as noted above, the
        claimant does not have "limited" employment history; rather, he has a
12      documented history of working for the same employer for 15 years, during some
        of which he earned significant amounts.  In addition, there is no evidence from
13      the claimant's long-term employer to establish that the claimant's work is a
        special accommodation or that he has not performed the work satisfactorily.  It
14      also appears that Dr. Lloyd did not adequately consider the extent of the
        claimant's activities.  He stated that the claimant "struggled to identify areas of
15      interest" beyond watching television, playing computer games, and flying kites;
        however, as discussed above, the claimant has described many activities
16      showing that his interest and involvement are well within normal ranges,
        including but not limited to his competitive kite flying, socializing at church
17      activities and meetings, performing household chores, driving, banking, and
        shopping.  Finally, the record shows that the claimant is capable of some
18      appropriate social interactions, as evidenced by his ability to attend church
        meetings and activities, events related to his kite flying, and his longstanding
19      employment.  For all these reasons, Dr. Lloyd's opinion is not sufficiently
        supported or consistent with the record and is therefore not given significant
20      weight.

21   (AR 29, internal citations to record omitted.)

22      Plaintiff argues the ALJ is not qualified to reject Dr. Lloyd's opinion based on the ALJ's

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  belief that the opinion is contradicted by the IQ test results.   However, in fact, "[t]he ALJ is

02  responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533

03  F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

04  2003)).   *Accord Thomas*, 278 F.3d at 956-57 ("When there is conflicting medical evidence, the

05  Secretary must determine credibility and resolve the conflict.") (quoting *Matney v. Sullivan*,

06  981 F.2d 1016, 1019 (9th Cir. 1992)).   When evidence reasonably supports either confirming

07  or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ,

08  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

09       In this case, the ALJ appropriately relied on the internal inconsistency between Dr.

10  Lloyd's findings on examination and his opinion, as well as on the contradictory opinion

11  evidence from Dr. Peterson and the reviewing physicians.   *See Bayliss v. Barnhart*, 427 F.3d

12  1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction

13  between opinion and the physician's own notes or observations is "a permissible determination

14  within the ALJ's province."); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir.

15  1999) (ALJ appropriately considers internal inconsistencies within and between physicians'

16  reports).   The ALJ's interpretation of the evidence can be deemed reasonable.

17       Plaintiff also offers cursory arguments that his limited activities do not justify the

18  rejection of Dr. Lloyd's opinions, and that his ability to engage in some social interactions is not

19  a convincing or even legitimate reason to reject the opinions of a physician who based his

20  opinions on extensive neuropsychological testing.   These arguments fail.   An ALJ properly

21  considers inconsistency with the record in rejecting a physician's opinions. *Tommasetti v.*

22  *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).   In this case, the ALJ appropriately reasoned that

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01   the record contained evidence that plaintiff engaged in more extensive activities and social

02   interactions than that considered by Dr. Lloyd.   The ALJ also properly considered the

03   contradictory medical evidence in the record.[3]

04        Plaintiff does, however, raise a legitimate criticism as to the ALJ's rejection of Dr.

05   Lloyd's opinion based on that physician's understanding of plaintiff's employment history.

06   Again, plaintiff establishes that the Appeals Council erred in the assessment at step four, and, in

07   particular, the conclusion that plaintiff did not receive special accommodations in his past

08   work.   Unlike Dr. Peterson, Dr. Lloyd appears to have had a fairly accurate understanding as to

09   the details surrounding plaintiff's past work.   (See AR 246, 248-49 ("Mr. Hilliard has worked

10   on a part-time basis for a company owned by a member of the church he attends.   He is

11   apparently called in to work on an as-needed basis when they have work available for him.

12   This involves cutting patterns from heavy-duty paper for wood products that are manufactured

13   by this company.   Mr. Hilliard earned less than $10,000 in the last year from this work.

14   Fortunately, his employer has maintained him on the company health insurance policy."; "The

15   limited work experience he has involves fairly repetitive tasks that he performs essentially in

16   isolation.   He is not required to interact with coworkers or with the general public[.]"; "He has

17   been very fortunate in having an employer who has been willing to support him on the

18   company's medical coverage despite the fact that Mr. Hilliard works on a part-time basis.   It is

19   also important to note that Mr. Hilliard was not required to apply for or interview for his job.

20   _____

21        3 Plaintiff, in reply, challenges arguments raised by the Commissioner supporting the ALJ's
     assessment of Dr. Lloyd's opinions.   (See Dkt. 17.)   However, the Commissioner's arguments were in
     large part not responsive to the arguments raised by plaintiff and addressed above.   (See Dkt. 16.)

22   Moreover, none of the arguments undermine the substantial evidence support for the ALJ's decision to
     not assign significant weight to the opinions of Dr. Lloyd.

01  Given his extreme social discomfort the act of applying and interviewing for a job would pose a

02  virtually insurmountable barrier to employment for Mr. Hilliard.”))   The ALJ was not privy to

03  the information provided by plaintiff’s employer and setting forth the special accommodations

04  provided in plaintiff’s past work.  (AR 134.)  This evidence undercuts the rejection of Dr.

05  Lloyd’s opinions based, in part, on the absence of evidence plaintiff was provided special

06  accommodations in his work.

07       The ALJ did, as discussed above, set forth specific and legitimate reasons for rejecting

08  Dr. Lloyd’s opinions.  Given those other reasons, it could be argued the error as related to

09  plaintiff’s past work was harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

10  (ALJ’s error may be deemed harmless where it is “‘inconsequential to the ultimate

11  nondisability determination.’”; court looks to “the record as a whole to determine whether the

12  error alters the outcome of the case.”) (cited sources omitted).  However, because this case

13  should be remanded in relation to plaintiff’s past work, the ALJ should take the opportunity on

14  remand to consider the impact, if any, of the evidence from plaintiff’s employer as related to the

15  opinions of Dr. Lloyd.

16                                              Credibility

17       Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

18  reject a claimant’s testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

19  (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

20  260 F.3d 1044, 1049 (9th Cir. 2001).   “General findings are insufficient; rather, the ALJ must

21  identify what testimony is not credible and what evidence undermines the claimant’s

22  complaints.”  *Lester*, 81 F.3d at 834.  “In weighing a claimant’s credibility, the ALJ may

01   consider his reputation for truthfulness, inconsistencies either in his testimony or between his

02   testimony and his conduct, his daily activities, his work record, and testimony from physicians

03   and third parties concerning the nature, severity, and effect of the symptoms of which he

04   complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

05        The ALJ in this case found plaintiff's impairments could be reasonably expected to

06   cause some of the alleged symptoms, but that his statements concerning the intensity,

07   persistence, and limiting effects of those symptoms were not credible to the extent inconsistent

08   with the assessed RFC.   Plaintiff challenges the reasons offered by the ALJ in support of that

09   conclusion.

10   A.     Objective Evidence

11        The ALJ concluded the objective findings in the record failed to provide "strong

12   support" for the extent of the symptoms and limitations alleged, and were more consistent with

13   the assessed RFC.   (AR 26.)   As reflected above, the ALJ discussed the objective medical

14   findings in detail, and concluded the findings supported some degree of limitation, but not "so

15   severe that they would preclude employment." (AR 26-27.)

16        Plaintiff incorrectly argues this reasoning constituted the improper application of the

17   "objective evidence test."   (Dkts. 15 & 17.)   "While subjective pain testimony cannot be

18   rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

19   medical evidence is still a relevant factor in determining the severity of the claimant's pain and

20   its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); Social Security

21   Ruling (SSR) 96-7p.   The ALJ did not find plaintiff less than fully credible based solely on the

22   lack of objective support.   Instead, the ALJ offered a number of reasons to support his

01   conclusion.

02       Plaintiff also contends that this portion of the ALJ's credibility assessment was tainted

03   by the failure to properly evaluate the medical opinion evidence.   As discussed above, with the

04   exception of partial error in relation to Dr. Lloyd, the ALJ properly assessed the medical

05   evidence.   The partial error does not alter the ALJ's conclusion that the objective evidence

06   does not support the degree of limitation alleged.

07   B.   <u>Treatment</u>

08       The ALJ noted plaintiff "has received no treatment for his allegedly disabling

09   conditions, and was only recently evaluated in connection with his claim for disability

10   benefits."   (AR 26.)   Plaintiff avers error in the ALJ's failure to acknowledge the absence of

11   any cure for developmental disorders, and points to Dr. Lloyd's observation that, although

12   plaintiff may benefit from social skills based training, "even with such intervention, it is

13   doubtful" he "would be able to acquire the full range of skills needed to successfully engage in

14   a job search and maintain employment in a competitive work setting."   (AR 249.)   In his

15   reply, plaintiff states that there is no treatment available to him.   (Dkt. 17 at 4-6.)

16       Plaintiff's arguments lack merit.   An ALJ appropriately considers an unexplained or

17   inadequately explained failure to seek treatment or follow a prescribed course of treatment.

18   *Tommasetti*, 533 F.3d at 1039; *Burch v. Barnhart*, 400 F.3d 676, 781 (9th Cir. 2005).

19       Plaintiff improperly equates the absence of a "cure" for developmental disorders with

20   the absence of any treatment.   The mere fact a condition may not be reversed does not mean

21   any and all symptoms of that condition may not be reduced or mitigated to some degree.

22   Indeed, as plaintiff recognizes, although Dr. Lloyd found the complete success of intervention

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  "doubtful," he identified specific treatment options, such as basic social skills training and a

02  structured cognitive-behavioral oriented treatment program, involving "a combination of

03  individual therapy, group interaction[,] treatment[,]" and "[t]raining in basic social

04  pragmatics[.]"  (AR 249.)  Also, Dr. Peterson stated he "would like to see this claimant in a

05  vocational training program tailored to his strengths."  (AR 216.)

06        Plaintiff's argument is further undercut by the focus on only one of his conditions.   He

07  does not suggest, nor can it be said that there is an absence of any treatment available for social

08  anxiety disorder and features of schizoid and avoidant personality disorder.   Dr. Lloyd, in fact,

09  opined that plaintiff would benefit from treatment for his anxiety.  (AR 249.)  Plaintiff sets

10  forth no explanation for the failure to seek treatment, and does not establish error in the ALJ's

11  consideration of this factor.

12  C.    Work Activity

13        The ALJ next found plaintiff's work activity to serve as a basis for undermining his

14  credibility.   The ALJ noted the fluctuating and sometimes full-time work plaintiff performed

15  for the same employer, for a number of years.   (AR 27.)   He further stated:

16        It is significant that there is no evidence whatsoever that the claimant's
        employment involves any special accommodations, is sheltered in any way, or
17        that the claimant's performance is not acceptable.   The claimant's ongoing and
        consistent work activity seriously undermines his allegation of disability.
18

19  (*Id.*)

20        Plaintiff asserts that, for the past fifteen years, he has been working for a family friend,

21  who created for him "essentially a sheltered workshop type of job[.]"  (Dkt. 15 at 13.)   He

22  points to his testimony, the testimony of his sister, and the statement from his employer, Pat

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01   Orrino, as providing evidence of the special accommodations provided in his work.   (*See* AR

02   46-47, 55-56, and 134.)   He denies that his work activity serves as a clear and convincing

03   reason to reject his testimony, and maintains his sporadic ability to perform this accommodated

04   work was fully consistent with that testimony.

05          An ALJ properly considers a claimant's work history in evaluating credibility.   *Smolen*

06   *v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996*)*.   *See also Gregory v. Bowen*, 844 F.2d 664,

07   666-67 (9th Cir. 1988) ("Furthermore, substantial evidence indicated that the condition of

08   Gregory's back had remained constant for a number of years and that her back problems had

09   not prevented her from working over that time.")   Plaintiff testified he had been performing the

10   work at issue, part-time, for several years leading up to the 2011 hearing, some weeks having no

11   hours and other weeks working "up to as many as 35 to 40[]" hours.   (AR 41, 43.)   He had, the

12   week prior to the hearing, worked for thirty or so hours.   (AR 43.)

13          Given plaintiff's testimony and other evidence in the record, the ALJ reasonably

14   considered evidence of plaintiff's work activity as detracting from his credibility as to the

15   degree of his symptoms and their impact on his ability to work.   The reasonableness of the

16   ALJ's consideration of plaintiff's work as a general matter and the other clear and convincing

17   reasons provided for rejecting plaintiff's credibility could be said to support the conclusion that

18   the ALJ's statement as to a lack of accommodations constituted harmless error.   *See Molina*,

19   674 F.3d at 1115.

20          However, as discussed in detail below, the Court agrees with plaintiff that the letter

21   from Mr. Orrino supports the conclusion that plaintiff received special accommodations which

22   allowed him to perform his work.   As this matter should be remanded for further consideration

01  given the error at step four, the ALJ should also take the opportunity to consider whether the

02  letter from Mr. Orrino impacts the assessment of plaintiff's credibility.

03  D.      Inconsistent Statements

04         The ALJ also found inconsistencies relating to plaintiff's work activity to detract from

05  his credibility.   (AR 28.)   He contrasted plaintiff's statements to Dr. Peterson with the

06  evidence in the record.   He also noted plaintiff's report to Dr. Grubb that he "'has never been

07  able to hold a steady job'" and Dr. Lloyd's observation that he worked only "'on a part-time

08  basis.'"   (*Id.* (citing AR 256 and 249).)   The ALJ found these statements "completely

09  contradicted by the claimant's earnings record, which show that he has worked consistently for

10  the same employer for at least 15 years, some of which he earned significant amounts consistent

11  with substantial gainful activity[.]"   (*Id.* (citing AR 125-31).)

12         Plaintiff avers that neither the fact that Dr. Peterson did not fully understand his past

13  work activity, nor Dr. Lloyd's accurate observation that he worked part-time serves as a

14  convincing reason to reject his testimony.   However, while the reliance on Dr. Lloyd's

15  comment is questionable, the ALJ appropriately noted inconsistency between the information

16  provided to Drs. Peterson and Grubb and the evidence in the record as to the extent of plaintiff's

17  work activity.   In particular, Dr. Peterson's statement that plaintiff "has almost no work

18  history[]" (AR 216) and Dr. Grubb's observation that plaintiff has been unable "to hold a steady

19  job[]" supports the ALJ's conclusion as to inconsistency between plaintiff's reporting and the

20  record.   The ALJ, therefore, properly considered this factor in relation to plaintiff's credibility.

21  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ appropriately considers

22  inconsistency with the evidence) and SSR 96-7p ("One strong indication of the credibility of an

01 individual's statements is their consistency, both internally and with other information in the

02 case record.")   The ALJ need only reconsider this issue if necessitated by consideration of the

03 evidence from Mr. Orrino.

04 E.    Activities of Daily Living

05        The ALJ also relied on evidence of plaintiff's activities:

> Finally, I note that although the claimant alleges symptoms and limitations so
> severe that they render him debilitated, the record documents significant
> activities that suggest greater functioning and that undermine the claimant's
> allegations.  The claimant has had the privilege of living at home all of his life
> and has had all household services and benefits provided by his family.
> Nonetheless, function reports contained in the record show that the claimant is
> able to perform activities including preparing simple meals on a daily basis,
> shopping, doing household chores and yard work, driving without restriction,
> visiting his mother, and attending church.   The claimant enjoys activities
> including reading, watching television, playing video games, playing golf,
> music and playing piano, and attends church.   In addition, the claimant testified
> that he belongs to the American Kite Flyer Association and has traveled on his
> own to places including Oregon, California, and the Washington coast for
> competitions and meeting[s] related to his kite flying; he told Dr. Peterson that
> he recently won a kite flying contest.   The claimant has reported traveling alone
> and camping.  Although the ability to travel and disability are not mutually
> exclusive, the fact that the claimant is able to independently prepare for and
> make trips on his own suggests capabilities that are consistent with work-related
> abilities.   It is also significant that although allegations have been made
> regarding the claimant's social difficulties, activities in the record suggests that
> those limitations are not as severe as alleged.  For example, in a Function
> Report he completed, the claimant reported socializing with others at church and
> paying golf with friends.   The claimant also reported that he has no trouble
> getting along with authority figures.   The claimant's documented activities,
> when considered in light of the rest of the record, establishes greater functioning
> than alleged and supports the residual functional capacity set forth above.

20 (AR 28, internal citations to record omitted.)

21        Plaintiff contests the ALJ's statement that he claimed to be "debilitated[,]" and

22 describes the ALJ's statement as to the "privilege" of living at home with services and benefits

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01  provided to him as "an egregious and insulting mischaracterization" of his situation.   (Dkt. 15

02  at 14 and AR 28.)   He states that, more accurately, he lived with his parents his whole life

03  because he was unable to live on his own due to his developmental disorder, and contends this

04  statement calls into question the ALJ's ability to fairly adjudicate this matter if remanded for

05  another hearing.   Plaintiff otherwise challenges the ALJ's assertion that his activities are

06  inconsistent with his testimony.   He notes, for example, that he has attended only two

07  kite-flying conventions, that he socializes only with fellow church members, and points to his

08  testimony as to his difficulty in holding conversations with people.   (*See* AR 47-51.)

09          However, an ALJ appropriately considers inconsistencies or contradictions between a

10  claimant's statements and activities of daily living.   *Tonapetyan*, 242 F.3d at 1148; *Thomas*,

11  278 F.3d at 958-59.   *See also Molina*, 674 F.3d at 1112-13 ("While a claimant need not

12  "'vegetate in a dark room'" in order to be eligible for benefits, the ALJ may discredit a

13  claimant's testimony when the claimant reports participation in everyday activities indicating

14  capacities that are transferable to a work setting.   Even where those activities suggest some

15  difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

16  extent that they contradict claims of a totally debilitating impairment.") (citations omitted).

17  Here, the ALJ properly considered the inconsistency between plaintiff's testimony as to the

18  degree of his limitation and the extent of his activities.

19          Nor does plaintiff demonstrate bias on the part of the ALJ.   An ALJ is presumed to be

20  unbiased and such presumption can only be rebutted "'by a showing of conflict of interest or

21  some other specific reason for disqualification.'"   *Valentine v. Comm'r SSA*, 574 F.3d 685,690

22  (9th Cir. 2009) (quoting *Rollins*, 261 F.3d at 857).   In this case, the ALJ's use of the terms

01   "debilitated" and "privilege" does not suffice to demonstrate his inability to fairly adjudicate

02   plaintiff's claim.   Instead, these terms can be deemed less than ideal word choices to support

03   otherwise reasonable observations.   For example, substitution of the term "fortune" for

04   "privilege" in the ALJ's statement would have been an entirely accurate and appropriate

05   observation on the part of the ALJ.   There is, therefore, no basis for assignment to a different

06   ALJ on remand.

07                                              Lay Witness Evidence

08           Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

09   to work is competent evidence and cannot be disregarded without comment.   *Van Nguyen v.*

10   *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).   The ALJ can reject the testimony of lay

11   witnesses only upon giving germane reasons.   *Smolen*, 80 F.3d at 1288-89 (finding rejection of

12   testimony of family members because, *inter alia*, they were "'understandably advocates, and

13   biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and

14   therefore [did] not qualify as a reason germane to each individual who testified.") (citing

15   *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

16           Plaintiff avers error in the ALJ's consideration of the lay witness evidence from his

17   sister and brother:

18           In addition to her testimony at the hearing, I have considered a statement written
            by the claimant's sister in August 2009 in which she stated that the claimant
19           needed direction with many tasks and had never been employed full-time.   She
            stated that the claimant never engaged in conversation on his own and took a
20           long time to answer questions.   The claimant's brother completed a Third Party
            Function Report in May 2009 in which he stated that the claimant sometimes
21           needed reminders to attend to personal care tasks or perform chores.   The
            claimant's brother stated that the claimant had slow responses in conversation
22           and trouble understanding and following some verbal instruction.   He stated

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -21

01     that the claimant sometimes did not complete tasks on time or at all, and
       sometimes lacked concentration when doing assigned tasks.  The claimant's
02     brother stated that the claimant had problems handling stressful situations and
       became frustrated easily under stress or with changes in routine.   He stated that
03     the claimant was very introverted, had few friends, and preferred to be alone
       most of the time.    The testimony and statements of the claimant's siblings
04     have been considered and are generally corroborative of the claimant's
       allegations, and I find the lay witnesses generally credible.   However, the
05     testimony and statements also generally describe an individual who is capable of
       the [RFC] set forth above, and their opinions and observations are not consistent
06     with a finding of disability, i.e. a complete inability to work.   The objective
       findings and the claimant's activities, including his work, support greater
07     functioning than alleged.

08     (AR 29-30 (internal citations to AR 191 and AR 179-87).)

09          Plaintiff describes the testimony of the lay witnesses in detail and contends that the

10     testimony, credited as true, shows he is more limited than found by the ALJ.   However,

11     plaintiff fails to set forth any basis for crediting the lay witness testimony as true.   The ALJ

12     gave some credit to the testimony proffered by these witnesses, and the RFC accounts for some

13     of the limitations attested to, including limitations in plaintiff's interactions with others.   The

14     ALJ also provided germane reasons for not entirely accepting the lay testimony, appropriately

15     pointing to the objective findings and plaintiff's activities as supporting plaintiff's greater

16     ability.   *See*, *e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("The ALJ

17     accepted the testimony of Bayliss's family and friends that was consistent with the record of

18     Bayliss's activities and the objective evidence in the record; he rejected portions of their

19     testimony that did not meet this standard."); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)

20     (contradictory medical records supported ALJ's rejection of lay testimony as to symptoms).

21     Given the provision of this germane reasoning, the ALJ's assessment has the support of

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01   substantial evidence.[4]   The ALJ need not reconsider the lay testimony except as necessitated

02   by consideration of the evidence from Mr. Orrino.

03                                                      Step Three

04            Plaintiff argues the ALJ erred in concluding his impairments did not meet or equal a

05   listing.   He maintains the medical evidence from Dr. Lloyd and Dr. Peterson, along with his

06   testimony and the lay evidence, support the conclusion that he meets or equals Listing 12.10,

07   governing autistic disorder and other pervasive developmental disorders.   That is, the evidence

08   shows he has qualitative deficits in reciprocal social interaction and in verbal and nonverbal

09   communication, and marked restrictions in at least two of the following areas: activities of daily

10   living; maintaining social functioning; maintaining concentration, persistence, or pace; or

11   repeated episodes of decompensation each of extended duration.   20 C.F.R. Pt. 404, Subpt. P,

12   App. 1, § 12.10.

13            Plaintiff bears the burden of proving the existence of impairments meeting or equaling a

14   listing.   *Burch*, 400 F.3d at 683.   Plaintiff does not identify medical opinion or other evidence

15   establishing he met the specific requirements of Listing 12.10.   As discussed above, the ALJ

16   provided specific and legitimate reasons for rejecting some opinion evidence, and properly

17   relied on contradictory evidence in the record.   While plaintiff points generally to evidence in

18   the record he maintains supports a step three finding, he fails to offer any "theory, plausible or

19   otherwise, as to" how his impairment met a listing.   *Lewis*, 236 F.3d at 514.   Accordingly,

20   plaintiff's step three argument should be denied.

21   _____

22            4   In reaching this conclusion, the Court declines to address the Commissioner's argument and
     plaintiff's response on the question of whether the ALJ fully accommodated the lay witness testimony in
     the RFC.   (*See* Dkt. 16 at 11 and Dkt. 17 at 8.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -23

01                                    <u>RFC</u>

02          Plaintiff avers that the ALJ improperly determined his RFC, pointing to the ALJ's

03   failure to include all of the limitations described by Drs. Lloyd and Peterson, as well as

04   limitations described in his testimony and by lay witnesses.   However, with the limited

05   exception of the consideration of past work, plaintiff fails to demonstrate error in the

06   consideration of the medical opinions, plaintiff's credibility, or the lay testimony.   The mere

07   restating of plaintiff's arguments fails to establish error in the assessment of plaintiff's RFC.

08   *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).   Again, the ALJ need

09   only reconsider plaintiff's RFC as necessitated by consideration of the evidence from Mr.

10   Orrino.

11                      <u>Past Relevant Work Finding at Step Four</u>

12          Plaintiff argues error in the decision of the Appeals Council at step four.   The Appeals

13   Council concluded plaintiff's earnings in his position as a trim stencil maker rose to the level of

14   SGA in at least six different years since 1996.   (AR 5.)   The decision further stated:

15          [T]he Council notes that a letter from this employer did not reference the need
            for any accommodations to perform this job, although it did indicate that the
16          claimant encountered difficulties when asked to perform additional tasks.
            Therefore, the Council finds that the [RFC] would enable the claimant to
17          perform the job of trim stencil maker as he actually performed it.

18   (*Id.*)

19          Plaintiff bears the burden of showing he does not have the capacity to engage in past

20   relevant work.   Past relevant work is work (1) performed within the past fifteen years, (2)

21   constituting SGA, and (3) lasting long enough for the individual to have learned how to perform

22   the work.   20 C.F.R. §§ 404.1560(b)(1), 404.1565(a), 416.960(b)(1), 416.965(a).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -24

01       SGA "is work done for pay or profit that involves significant mental or physical

02    activities." *Lewis*, 236 F.3d at 515 (citing 20 C.F.R. §§ 404.1571-404.1572 &

03    416.971-416.975). Earnings are a presumptive, not a conclusive sign of whether a job

04    constitutes SGA. *Id.* Factors relevant to the consideration of work activity include "the

05    nature of the claimant's work, how well the claimant does the work, if the work is done under

06    special conditions, if the claimant is selfemployed [sic], and the amount of time the claimant

07    spends at work." *Id.* (citing 20 C.F.R. §§ 404.1573, 416.973).

08       Plaintiff avers his work as a trim stencil maker does not constitute past relevant work

09    because it was performed under special conditions. Work performed under special conditions,

10    such as work in a sheltered workshop or as a patient in a hospital, may be found to not constitute

11    SGA. 20 C.F.R. § 404.1573(c). Examples of special conditions include: (1) the

12    requirement and receipt of special assistance from other employees in performing work; (2) the

13    allowance to work irregular hours or take frequent rest periods; (3) the provision of special

14    equipment or assignment to work especially suited to an individual's impairment; (4) the ability

15    to work only due to specially arranged circumstances, such as other people helping you prepare

16    for or get to and from work; (5) permission to work at a lower standard of productivity or

17    efficiency than other employees; or (6) the fact that you were given the opportunity to work

18    despite your impairment because of family relationship, past association with your employer, or

19    your employer's concern over your welfare. *Id.*

20       Plaintiff argues his past work meets all but the fourth above-described criteria.

21    Plaintiff testified he got the job through a member of his congregation, that he believed his

22    employer continued to provide him with medical insurance even when he was not working, that

01   he was not required to interview for the position, and that he worked at his own pace, which he

02   believed was slower than average.  (AR 46-47.)  He further points to the letter from his

03   employer, submitted to the Appeals Council, as demonstrating he was provided with special

04   conditions to perform his job.  (AR 134.)  For the reasons described below, the Court agrees

05   with plaintiff.

06       The Appeals Council found that the letter from Mr. Orrino did not reference the need for

07   any accommodations, while conceding it indicated plaintiff encountered difficulties when

08   asked to perform additional tasks.  (AR 5.)  This was not a fair reading of the letter.

09       Mr. Orrino, of Woodland Trade Company, Inc, described plaintiff as a "reliable and

10   trustworthy employee[]" since September 1990, adding that, "[w]hile he has some outstanding

11   qualities to offer an employer, he also has limitations."  (AR 134.)  It was not possible to give

12   plaintiff "various tasks throughout the day[,]" as it was difficult for him to "grasp new styles or

13   approaches on assignments" and he was "not multi-task oriented."  (*Id*. ("He gets very

14   frustrated and anxious if queried to work on several projects at the same time."))  Also, due to

15   "safety concerns[,]" the company "restricted his use of motorized electrical equipment[.]"

16   (*Id*.)  However, because he has been "such a dedicated and dependable worker" it was

17   "possible for him to be employed and to work on one specific job . . .  routinely perform[ed] for

18   a customer."  (*Id*.)  The job was repetitive and required only minimal use of hand tools.

19   While it allowed for plaintiff's employment quite frequently in the past, it had of late been

20   infrequently available.  Mr. Orrino "certainly could not say that [plaintiff] is considered an

21   employable individual who can handle work related skills that require multi-tasking."  (*Id*.)

22   He found "it difficult to believe [plaintiff] could be gainfully employed due to his cognitive

01  restrictions at any company[,]" and stated plaintiff had been employed with his company due to

02  their "long standing history", but "with limited duties."   (*Id.*)

03  The letter from Mr. Orrino supports the conclusion that plaintiff required specific

04  accommodations to perform the job.   In fact, it appears plain plaintiff was assigned to work

05  "especially suited" to his impairment, and that he was able to work "only due to specially

06  arranged circumstances[.]"   § 404. 1573(c)(3)-(4).   It further appears likely he was permitted

07  to work at a lower standard of productivity or efficiency than other employees, given that,

08  unlike those employees, he was unable to perform a variety of tasks throughout the day.   §

09  404.1573(c)(5).   Also, the letter from Mr. Orrino, taken together with the testimony of both

10  plaintiff and his sister, supports the conclusion that plaintiff was given the opportunity to work

11  because of concern as to his welfare.   § 404.1573(c)(6).   (*See* AR 55 (plaintiff's sister testified

12  as to her belief the work was provided "as a favor," given that the company "know the

13  circumstances and they've kind of taken him under his, their wing and taught him, you know, a

14  specific job that he can handle."))

15  The Commissioner asserts that Mr. Orrino indicated plaintiff's irregular hours were due

16  to changes in the industry, rather than any accommodations provided, and that he did not

17  indicate plaintiff was permitted to work at a lower productivity standard than other employees.

18  This reasoning ignores the evidence that the job itself appears to have been created as an

19  accommodation for plaintiff.   The assertion as to an absence of evidence plaintiff was provided

20  special equipment ignores the fact that, as an accommodation, he was excluded from work

21  requiring the use of motorized equipment, and that he appears to have been "assigned work

22  especially suited to [his] impairment."   § 404.1573(c)(3).   Finally, that plaintiff got the job

01  through a member of his congregation does not exclude the conclusion he was employed based

02  on a concern for his welfare.   In fact, the church association, considered together with the

03  language and tone of Mr. Orrino's letter and the testimony of plaintiff and his sister, further

04  bolsters the conclusion that plaintiff was provided the work out of concern for his welfare.

05      In sum, the Appeals Council's interpretation of the evidence from Mr. Orrino, along

06  with the remainder of the evidence on this particular issue, was not reasonable.   Instead, the

07  evidence from Mr. Orrino demonstrates the lack of substantial evidence support for the

08  conclusion that plaintiff's work as a trim stencil maker constitutes SGA and, therefore, past

09  relevant work at step four.

10                                  <u>Remand</u>

11      The Court has discretion to remand for further proceedings or to award benefits.   *See*

12  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).   The Court may direct an award of

13  benefits where "the record has been fully developed and further administrative proceedings

14  would serve no useful purpose."   *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.

15  2002).

16          Such a circumstance arises when: (1) the ALJ has failed to provide legally
            sufficient reasons for rejecting the claimant's evidence; (2) there are no
17          outstanding issues that must be resolved before a determination of disability can
            be made; and (3) it is clear from the record that the ALJ would be required to
18          find the claimant disabled if he considered the claimant's evidence.

19  *Id.* at 1076-77.

20      Plaintiff notes the vocational expert's testimony that the addition of a limitation to the

21  RFC and hypothetical allowing plaintiff to work at his own pace would preclude a finding that

22  plaintiff could perform past or any other work in the national economy.   (AR 60-61.)   Based

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -28

01 on this and other errors, including medical opinion testimony which plaintiff posits should be

02 credited as true, plaintiff argues this matter should be remanded for an award of benefits.   (*See*,

03 *e.g.*, AR 62 (VE testimony responding to hypothetical including various factors contained in

04 medical evidence).)

05      The Court disagrees.   The ALJ did not include any limitation related to pace or other

06 limitations urged by plaintiff, and plaintiff fails to set forth reversible error in all but the

07 consideration of the lay statement from Mr. Orrino.   This matter should be remanded and the

08 ALJ directed to consider the lay statement from Mr. Orrino at step four, and to further consider

09 whether, at step five, other work exists in significant numbers in the national economy plaintiff

10 could perform.

11 **CONCLUSION**

12      For the reasons set forth above, this matter should be REMANDED for further

13 administrative proceedings.

14      DATED this <u>22nd</u> day of July, 2013.

15

16 _____
Mary Alice Theiler

17 United States Magistrate Judge

18

19

20

21

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -29